UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS E. CANELL,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

NO. C13-1248-JPD

ORDER

Plaintiff Thomas E. Canell appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") that denied his application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing

before an administrative law judge ("ALJ"). For the reasons set forth below, the Court

AFFIRMS the Commissioner's decision.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 55-year-old man with a high

school education. Administrative Record ("AR") at 35-36. His past work experience includes

employment as a cook, café cashier, janitor, fast-food cashier, and warehouse worker. AR at

164. Plaintiff was last gainfully employed in 2007. *Id*.

ORDER - 1

1    On August 4, 2010, he filed an application for DIB, alleging an onset date of June 30,

2    2007.  AR at 148-50.  Plaintiff asserts that he is disabled due to high blood pressure, obesity,

3    leg cellulitis, vertigo, heart problems, and memory problems.  AR at 163.

4    The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 86-

5    92, 94-98.  Plaintiff requested a hearing, which took place on January 24, 2012.  AR at 31-66.

6    On February 2, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied

7    benefits based on her finding that plaintiff could perform a specific job existing in significant

8    numbers in the national economy.  AR at 17-27.  Plaintiff's administrative appeal of the ALJ's

9    decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final

10   decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On July 17,

11   2013, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt.

12   1, 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

ORDER - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose." *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Canell bears the burden of proving that he is disabled within the

meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

ORDER - 4

1  to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

2  the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

3  then the burden shifts to the Commissioner at step five to show that the claimant can perform

4  other work that exists in significant numbers in the national economy, taking into consideration

5  the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

6  416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable

7  to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On February 2, 2012, the ALJ found:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 30, 2007, through the date last insured ("DLI") of December 31, 2007.

3.    Through the DLI, the claimant's obesity was severe.

4.    Through the DLI, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Through the DLI, the claimant had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). He could lift and carry 25 pounds occasionally and frequently. He could sit about six hours and stand and/or walk two hours in an eight-hour workday with regular breaks. He could never climb ladders, ropes or scaffolds. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

6.    Through the DLI, the claimant was unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1958, and was 49 years old, which is defined as a younger individual age 18-49, on the DLI.[2] The

_____

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 5

1  claimant subsequently changed age category to closely approaching advanced age.

2
3      8.     The claimant has at least a high school education and is able to communicate in English.

4      9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

5
6      10.    Through the DLI, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

7
8      11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from June 30, 2007, the alleged onset date, through December 31, 2007, the DLI.

9
AR at 19-26.

10
                        VI.     ISSUES ON APPEAL

11
The principal issues on appeal are:

12
       1.     Whether the ALJ erred at step two by finding that Plaintiff's knee pain and edema were non-severe impairments;

13
       2.     Whether the ALJ erred in discounting Plaintiff's credibility; and

14
       3.     Whether the ALJ properly discounted the opinion of consultative examiner Allen Sinclair Chen, M.D.

15
16
Dkt. 13 at 1.

17
                          VII.     DISCUSSION

18
A.     The ALJ Did Not Err at Step Two.

19
       The ALJ found that Plaintiff's osteoarthritis and edema were not medically

20
determinable impairments due to lack of a "definite diagnosis" explaining his symptoms.  AR

21
at 19.  Plaintiff argues that the ALJ's findings overlook evidence in the record documenting the

22
limitations caused by his knee pain, and his chronic venous insufficiency and edema

23
symptoms.

24

1          1.      *Legal Standards at Step Two*

2          At step two, a claimant must make a threshold showing that his medically determinable

3   impairments significantly limit his ability to perform basic work activities. *See Bowen v.*

4   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

5   activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

6   404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not

7   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

8   effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security

9   Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of

10  groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).

11         To establish the existence of a medically determinable impairment, the claimant must

12  provide medical evidence consisting of "signs – the results of 'medically acceptable clinical

13  diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or

14  description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

15  Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a

16  medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

17         2.      *The ALJ Did Not Err in Finding that the Record Did Not Establish a Knee-*
                   *Related Impairment.*

18         The ALJ noted that the record contains Plaintiff's report of knee pain, but that his

19  providers noted only "possible" diagnoses of osteoarthritis or degenerative disc disease and did

20  not cite test results or other diagnostic evidence establishing the cause of his pain. AR at 19

21  (citing AR at 196-201, 239-44, 246-49). Plaintiff argues that because his providers

22  "diagnosed" him with knee pain, it is irrelevant that they did not identify the underlying cause

23

24

ORDER - 7

of the pain. Dkt. 13 at 7. Because Plaintiff's providers identified limitations caused by his

knee pain, he argues that the ALJ should have found it to be a severe impairment. *Id.*

Plaintiff's argument[3] fails to delineate between the two inquiries at step two: (1)

whether the claimant has medically determinable impairments, and (2) whether the claimant's

medically determinable impairments are severe. *See Bowen*, 482 U.S. at 145. The ALJ found

that "[t]here is no medically determinable impairment regarding [Plaintiff's] knees established

by the record." AR at 19. Thus, the Court's inquiry focuses on whether the record shows that

Plaintiff's knee pain is medically determinable, not whether it is severe.

"Knee pain" was included in the list of complaints recorded by two of Plaintiff's

providers. *See* AR at 196, 239. In lists of "diagnoses," the providers wrote "bilateral knee

pain, likely secondary to osteoarthritis particularly in the medial compartment" (AR at 200),

"bilateral knee pain possible [degenerative joint disease]" (AR at 241), and "knee pain likely

[degenerative joint disease]" (AR at 248). As noted by the Commissioner, none of those

diagnoses are definitive. Dkt. 14 at 5. The ALJ did not err in finding that the lack of a

definitive diagnosis of an impairment causing Plaintiff's knee pain renders any impairment not

medically determinable, because the record does not contain any "signs" or "laboratory

findings" that establish any knee-related impairment. *See* 20 C.F.R. §§ 404.1508, 416.908 (an

impairment "must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by your statement of symptoms"). Plaintiff's descriptions of knee

pain alone are "not enough to establish that there is a physical . . . impairment." 20 C.F.R. §§

404.1528, 416.928.[4]

---

[3] The Commissioner's argument in Response also conflates the two step-two inquiries.
Dkt. 14 at 5.
[4] The ALJ also discussed Plaintiff's allegations of knee pain when addressing her RFC
assessment, finding that even if she had included Plaintiff's knee impairment at step two, this

3.      *The ALJ Did Not Err in Finding that the Record Failed to Support an Edema-Related Impairment.*

The ALJ acknowledged that Plaintiff's leg edema was "mentioned in the record, most notably in past history, [but] there is [] no diagnosis for this symptom supported by the record during the relevant time period.  Furthermore, in January 2011, he was noted to have no edema of the joints and his range of motion was normal for all extremities. ([AR at 223-32].)"  AR at 19.  Plaintiff disputes the ALJ's findings as to edema, citing a consultative evaluation dated eight months after his DLI diagnosing him with chronic venous insufficiency in his lower extremities.  AR at 200.  The consultative examiner did not record observations of current edema, but noted that Plaintiff "reports poor circulation and chronic venous issues with significant swelling in his bilateral lower extremities."[5]  AR at 197.  Plaintiff also cites evidence of edema symptoms a year before his alleged onset date (AR at 247) and three and a half years after his alleged onset date (AR at 220-221), but cites no evidence of edema occurring during the relevant period.[6]  The ALJ did not err in relying on this lack of evidence to reject edema as a severe impairment at step two.

Plaintiff argues that the ALJ inaccurately described the January 2011 evidence, and the Court agrees that the ALJ's description of the January 2011 evidence misrepresents the consultative examiner's findings.  *Compare* AR at 19 *with* AR at 220.  The ALJ's description, however, is a superfluous summary of post-DLI evidence that is unconnected to the ALJ's primary finding that "there is no diagnosis for [edema symptoms] supported by the record

---

impairment "would not change the above stated [RFC]."  AR at 22.  This finding suggests that any error at step two regarding Plaintiff's knees would have been harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

[5] The ALJ noted that Plaintiff was diagnosed with chronic venous insufficiency by that consultative examiner, and provided reasons to discount that examiner's opinion.  AR at 24.

[6] Plaintiff in fact concedes that there is no evidence of edema occurring during the relevant period.  Dkt. 13 at 14 n.8.

ORDER - 9

1  during the relevant period." AR at 19. Because the ALJ's description of the January 2011

2  evidence is not relevant to the ultimate nondisability determination, her error in describing that

3  evidence is harmless. *See Molina*, 674 F.3d at 1115.

4  B.     The ALJ Did Not Err in Discounting Plaintiff's Credibility.

5       The ALJ provided a number of reasons to discount Plaintiff's credibility, namely (1)

6  inconsistencies in his allegations, (2) lack of treatment or conservative treatment for allegedly

7  disabling conditions, (3) his ability to work with the same conditions he contends are disabling,

8  (4) daily activities inconsistent with his allegations, and (5) lack of evidence corroborating

9  various allegations. AR at 22-23. Plaintiff does not challenge the ALJ's citation to

10  inconsistent medical evidence, but argues that this inconsistency alone cannot support the

11  adverse credibility determination. Dkt. 15 at 6.

12       1.     *Legal Standards on Assessing a Claimant's Credibility*

13       Once a claimant produces medical evidence of an underlying impairment, the ALJ may

14  not discredit the claimant's testimony as to the severity of symptoms solely because they are

15  unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.

16  1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative

17  evidence showing that the claimant is malingering, the ALJ must provide "clear and

18  convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*,

19  157 F.3d at 722.

20       2.     *The ALJ Provided Several Clear and Convincing Reasons to Discount
           Plaintiff's Credibility, Beyond the Unchallenged Inconsistent Objective Medical
21           Evidence*

22       The ALJ cited several inconsistencies in Plaintiff's reporting of symptoms that

23  undermine his credibility. The ALJ noted that although Plaintiff testified (AR at 37, 40-44)

24  that he stopped working because his doctor, Matthew Matko, M.D., told him he could not

ORDER - 10

perform his job duties due to medical conditions, and because his employer would not

accommodate the work restrictions recommended by his doctor, the record does not contain

any treatment notes or medical opinions regarding Plaintiff's job duties or required

accommodations.  AR at 23.  Plaintiff disputes this interpretation of the record, pointing to Dr.

Matko's January 2006 and June 2006 opinions regarding his ability to work.  AR at 239-49.

The Dr. Matko opinions of record do not match Plaintiff's description of his medical

history: Plaintiff testified that Dr. Matko opined as to the specific requirements of his job at

McDonald's and instructed that he could not return to work at all, or only with certain

accommodations:

> [ALJ]: . . . So you said that your doctor told you back in 2006 that you couldn't go back to work.
>
> [Plaintiff]: At where I was working.
>
> [ALJ]: At, at McDonald's?
>
> [Plaintiff]: Yes, he wouldn't give me the okay to go back.
>
> [ALJ]: What doctor was that?
>
> [Plaintiff]: That was Dr. Matko.  Matthew Matko.
>
> [ALJ]: Okay . . .
>
> . . .
>
> [ALJ]: Why did he say you couldn't go back to work at McDonald's?
>
> [Plaintiff]:  Well, he evaluated, I guess – I went in and asked him if I could get a okay to go back.  And he says, well, you can't do that kind of work anymore, because you can't – you have to be able to sit down or lay down for breaks and get the swelling out of your legs, and your vertigo has been coming – it's nothing like the first attack, but I would get dizzy spells and take a sidewinder.  And so he recommended I could not go back to work.  Not by choice, but – not by my choice, anyway, but his.
>
> . . .

1    　　　　　[ALJ]: . . . I want you to think back and tell me what was going on with
2    your health in, you know, those six months or so in 2007 that you think was
     preventing you from working.

3    　　　　　[Plaintiff]: Well, I just know that the – let's see, what did he check me
4    for? I know he said my heart wasn't doing well, so he gave me medications for
     all that. Trying to think all the different things he told me. I know about the
5    swelling in the legs and the – I have a bad left knee from a accident, and then a
     injury in – on my right leg that swells up every time I, I do certain things. And
6    I'm kind of being too vague, but I can't – trying to think what would have
     happened in there, what else he told me.

7    　　　　　. . .

8    　　　　　Well, well, my, my thing is, I wanted to work. So, you know, I went in,
     and they gave me the job, and they – obviously there were certain things that
9    they noticed that, you know – overweight and that kind of thing. And I couldn't
     lift things that were real heavy, but I could – my voice worked real well, and I
10   could take orders. So I did that, and he said, yeah, I have a place that –
     something you can do. And, when I went back, he said, there's too many
11   stipulations, because the doctor put me on – had to sit on a stool and that I had
     to take more breaks because of not being able to stand in one place for so long.
12   But basically, what I did on my breaks was just put my legs and get the swelling
     down, and then as soon as the break was over, I'd go back to work and –
13
     　　　　　[ALJ]: Because you couldn't – so the standing was the – what caused
14   the issue with the swelling?

15   　　　　　[Plaintiff]: In one place. I think if I could move around at the time, at
     that time, it was better. But you're standing in one place and taking orders and
16   then taking the money from the people that are going through the drive-thru.

17   AR at 40-44. The opinions from Dr. Matko in the record do not match Plaintiff's description,

18   because they were procured for purposes of evaluating his eligibility for public assistance (not

19   for purposes of evaluating his ability to return to work, or his ability to perform particular job

20   duties). AR at 239, 246. Nothing in the record indicates that Dr. Matko ever considered

21   Plaintiff's ability to perform his job at McDonald's, or indicated that he could not return to his

22   job there. Dr. Matko's opinions that Plaintiff was limited to sedentary work do not encompass

23   the specific findings attributed to him by Plaintiff at the administrative hearing, and thus the

24   ALJ did not err in finding Plaintiff's description to be inconsistent with the record. *See Sample*

     ORDER - 12

*v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

Although Plaintiff argues that the ALJ should have recontacted Dr. Matko to determine whether some evidence was missing from the record, especially in light of Dr. Matko's indication (AR at 242) that he started treating Plaintiff in August 2005 (even though the earliest Dr. Matko record dates to January 2006), Plaintiff himself reported that he first saw Dr. Matko in 2007 (AR at 167, 173, 181) and his attorney represented to the ALJ at the administrative hearing that there was no other evidence outstanding. AR at 34. The ALJ told Plaintiff at the hearing that the record did not contain the kind of notes that he had referenced (AR at 52), and Plaintiff did not at that time claim that evidence was missing. Under these circumstances, the ALJ's duty to develop the record was not triggered. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

The ALJ also cited evidence that Plaintiff's allegedly disabling symptoms were treated with conservative treatment or were not treated at all. AR at 22. Specifically, the ALJ pointed to evidence that Plaintiff reported that his knee pain was relieved with ibuprofen and rest, and that his vertigo was relieved by cleaning his ears. *See* AR at 196, 219. She noted that Plaintiff "received no regular treatment for any of his complaints other than with prescription medications," and that the fact that he did not receive regular treatment "suggests the medications have been relatively effective in controlling his symptoms." AR at 22.

Plaintiff claims that his lack of treatment is due to his lack of insurance (Dkt. 13 at 11-12), and that the ALJ should have inquired as to why he did not seek treatment rather than

construe his lack of treatment against him.  But the record contains many references to

Plaintiff's DSHS insurance, which applied after he spent down a particular amount (due to his

monthly inheritance income rendering him ineligible for DSHS insurance outright).  *See, e.g.*,

AR at 217, 252, 264-65, 283-84, 300-01.  The record contains references that Plaintiff sought

DSHS coverage for various medications (AR at 300), and that he was investigating whether

DSHS would cover gastric bypass surgery (AR at 297), but there is no indication that DSHS

ever refused to cover any particular procedure, medication, or treatment.  Furthermore,

Plaintiff testified at the administrative hearing that his doctors proposed a surgery on his knee,

but he thought it was unnecessary.  AR at 50.  Accordingly, the ALJ did not err in construing

the evidence of conservative treatment or no treatment at all against the credibility of

Plaintiff's allegations of disabling impairments.  *See Parra v. Astrue*, 481 F.3d 742, 750-51

(9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a

claimant's testimony regarding severity of an impairment"); *Molina*, 674 F.3d at 1113-14

(indicating that if an ALJ finds that a claimant lacks credible reasons for not seeking treatment,

the ALJ may rely on that lack of treatment to discount the credibility of the claimant's pain

complaints).

The ALJ also noted that Plaintiff's "allegedly disabling impairments were present at

approximately the same level of severity or worse prior to the alleged onset date[.]"  AR at 22.

The ALJ specifically asked Plaintiff about this issue with regard to his alleged knee problems,

after he testified that the problems that prevented him from working in 2007 were the swelling

in his legs and his vertigo:

> [ALJ]: . . . [Y]ou said something about your knees.  You had an old knee injury?
>
> [Plaintiff]: Yeah.  I've got a bad left knee.  It just – I still limp on it to this day, but –

ORDER - 14

1

[ALJ]: And that's been going on for how long?

2

[Plaintiff]: Since high school.

3

[ALJ]: So you've worked with that before?

4

[Plaintiff]: I've worked with it before.

5

[ALJ]: Has it gotten – did it get worse at some point?

6

[Plaintiff]: Well, it, it'll, it doesn't take much for it to give out, and then
it swells up. It's like water-on-the-knee sort of thing, and it gets pretty stiff.
It's like a defensive mechanism. And so that happens periodically, if I step off
a curb wrong or, or kick it against something.

7

8

9  AR at 49-50. The ALJ also noted that Plaintiff's vertigo improved after he started cleaning his

10  ears, and that most of Plaintiff's treatment since 2009 involved seeking medication refills, and

11  that he did not complain of other physical issues (other than obesity) on a number of occasions.

12  AR at 22 (citing AR at 202-18, 250-86). Plaintiff did not challenge this reasoning, and it is a

13  clear and convincing reason to discount his credibility. *See*, *e.g.*, *Drouin v. Sullivan*, 966 F.2d

14  1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of

15  success, and even if those particular jobs are, as she claims, too taxing for her, the vocational

16  counselor testified that she is qualified for thousands of less strenuous jobs.").

17      Because the ALJ provided these clear and convincing reasons to discount Plaintiff's

18  credibility, even if the ALJ erred in discounting Plaintiff's credibility on the basis of

19  inconsistent daily activities (*see* Dkt. 13 at 13-14), any error would be harmless. *See*

20  *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

21  C.      The ALJ Did Not Err in Discounting Dr. Chen's Opinion.

22      The ALJ assigned "some weight" to Dr. Chen's opinion, but discounted it due to (1) the

23  fact that Dr. Chen's evaluation was performed six months after Plaintiff's DLI; (2) Dr. Chen's

24  opinion that Plaintiff could walk less than two hours in a workday is inconsistent with

ORDER - 15

1   Plaintiff's testimony that he could walk up to two hours *at a time*, and is unrelated to a

2   medically determinable impairment; and (3) Dr. Chen's reference to Plaintiff using a cane,

3   when there is no evidence that Plaintiff has ever been prescribed a cane and did not testify that

4   he needed to use a cane in 2007.  AR at 24 (citing AR at 196-201).  Plaintiff argues that none

5   of these reasons was specific and legitimate.

6           1.      *Legal Standards on Examining Physician Opinions*

7           The opinions of examining physicians are to be given more weight than non-examining

8   physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

9   uncontradicted opinions of examining physicians may not be rejected without clear and

10  convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

11  physician only by providing specific and legitimate reasons that are supported by the record.

12  *Bayliss,* 427 F.3d at 1216.

13          2.      *The ALJ Provided a Specific and Legitimate Reason to Discount Dr. Chen's
                    Opinion Regarding Plaintiff's Ability to Stand/Walk*

14
            The timing of Dr. Chen's evaluation was not a legitimate reason to discount his

15  opinion, under *Lester*, 81 F.3d at 832 (holding that the fact that a consultative examiner's

16  opinion was rendered several months after the claimant's DLI does not justify discounting its

17  value, because "'medical evaluations made after the expiration of a claimant's insured status

18  are relevant to an evaluation of the preexpiration condition'" (quoting *Smith v. Bowen*, 849

19  F.2d 1222, 1225 (9th Cir. 1988))).

20          Neither was Plaintiff's use of a cane without a prescription during Dr. Chen's

21  evaluation a legitimate reason to discount Dr. Chen's opinion.  It may have been a proper

22  reason to discount Plaintiff's credibility, but it does not necessarily bear on the probative value

23  of Dr. Chen's opinion.  *See, e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)

24

(finding that the ALJ properly discounted a claimant's pain testimony because the claimant "used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk").

But the ALJ's remaining reasoning was specific and legitimate. Plaintiff testified that when he was working five-hour shifts at McDonald's in 2006 would elevate his legs "as much as I could get when I was at work" due to problems with his legs swelling, but that on a day when he was not working, he would need to elevate his legs "every couple hours." AR at 46-47. The ALJ reasonably construed Plaintiff's testimony that he needed a break to elevate his legs every two hours as inconsistent with Dr. Chen's opinion that Plaintiff could stand or walk for less than two hours during an entire workday.[7] Thus, because the ALJ properly found that Dr. Chen's opinion that Plaintiff was limited to less than two hours of standing/walking total per workday was contradicted by Plaintiff's self-described abilities, the ALJ was entitled to discount that opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ properly discounted a medical opinion that was unsupported by the claimant's testimony and inconsistent with her level of activity).

## VIII. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 15th day of January, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

---

[7] To the extent that the ALJ found that Dr. Chen's stand/walk limitation was not based on a medically determinable impairment, the ALJ erred because Dr. Chen attributed the limitation in part to Plaintiff's morbid obesity, which the ALJ found to be a severe medically determinable impairment. AR at 19, 24, 200.

ORDER - 17